We'll move now to our final case of the morning. This is Appeal No. 21-2463, Donald Karr v. Mark Sevier. We're going to begin with argument from Appellants Council. Mr. Thomas, I'll recognize you. Thank you, Your Honor. May it please the Court, good morning. My name is George Thomas and I am counsel for Appellant Donald Karr. This case is about an Indiana defendant that has been repeatedly refused an evidentiary hearing. There's really two main issues in this case that stem from a Martinez-Trevino analysis. The first is whether post-conviction counsel was ineffective and whether the underlying ineffective assistance of counsel claims relating to trial counsel are substantial and have merit. Mr. Thomas, let me focus you in on Ms. Ramil's representation of Mr. Karr. What is your response to the state's argument that Ms. Ramil's caused the procedural default in her role as direct appellant counsel rather than as post-conviction counsel? Your Honor, we disagree in the, I think, the analysis and the separation and distinction of her roles. Post-conviction counsel, Ms. Ramil, and I apologize if I'm mispronouncing her name, she raised issues in a post-judgment motion for new trial. And then in her representation of Mr. Karr post-trial, then moved, filed direct appeal, and as is custom in Indiana, moved for a Davis-Hatton procedure. And our response is that she was ineffective in her investigation of her claims that she ultimately brought in the motion for new trial, and then again, those same exact claims in the post-conviction proceeding, which barred any evidentiary hearing based on res judicata. And that's where our claim really lies, is that, you know, in order to say that there was a strategic decision in pursuing the Davis-Hatton procedure rather than going forward on direct appeal, first, there needs to be investigation, diligence, and some sort of forethought before it's rightful and lawful for the court to then state that it was a strategic choice. There has to be some sort of filtering of the claims before we can say that it was a strategic matter. And I think that brings me to my kind of sub-point A, which is that an evidentiary hearing, why this is so prejudicial to Mr. Karr is because, as this court knows, there's two burdensome restraints on really all Indiana defendants that are planning on raising ineffective assistance of counsel. You can bring an ineffective assistance of counsel claim on direct review, which would then limit you to the record on appeal and you'd have no evidentiary hearing. However, it's known amongst defense counsels that the burden is slightly, the evidentiary burden is slightly easier to meet because the record's already established. Whereas if you go to a Davis-Hatton procedure, you then have to, the goal of that is that you get to expand the record. That's the appeal of going to the Davis-Hatton procedure. So if Ms. Ramil is going to raise claims on the motion for new trial, and those issues are on the record, and then decides to go forward with a Davis-Hatton procedure, it brings up why, because there was no real reason to look for the Davis-Hatton procedure unless she were to raise new claims, which it is our position that she should have. And the evidentiary hearing is required to further develop the extent of trial counsel's actual pretrial investigation of medical reports, of the testing done at the hospital, and to clear up any details that a court may or may not have. And so by ultimately raising issues on the motion for new trial, and then re-raising them in the Davis-Hatton procedure, she barred Mr. Carr from having any chance to further develop the record. And that brings me to the second portion of the analysis, which is that trial counsel was, in fact, ineffective. I know that, and this court knows that sometimes medical records are hard to get introduced into evidence during trial. However, the introduction of the medical records would have been highly beneficial to Mr. Carr because it would have shown, at least we believe we would still need that evidentiary hearing to understand the details further, that the victim in this case, and I will abbreviate her name for her privacy, Miss AP. AP was known to have taken hydrocodone and to be potentially under the influence of several drugs and went back and forth on whether she knew or if she remembered taking drugs that the day of the incident or not. And so to not investigate that and at least thoroughly present the full story to the jury, we find to be prejudicial to Mr. Carr, and it's appellant stance that it does warrant an evidentiary hearing at the lower court, as we believe that we have met the burden under Martinez-Trevino. Would you like to reserve the remainder of your time? Yes, Your Honor. Thank you. Thank you, Mr. Thomas. We'll now move to argument from the appellee, Mr. Drummo. May it please the court. The court should affirm the district court. Carr has a fundamental misunderstanding of Indiana law, and I'm happy to address that, but the easiest way to resolve this case is to hold that all of Carr's claims are meritless. The state court reasonably applied Strickland to his fairly presented claims, and his procedurally defaulted claims are not substantial. Carr's first trial counsel, Taylor, performed competently overall. He selected a jury. He gave an opening statement in which he identifies his theory, which was that AP fabricated this story to get out of the relationship with Carr and for financial reasons. He cross-examined witnesses, including AP, for over 30 pages. He impeached AP with inconsistencies in her pretrial statements and her testimony. He excluded evidence, including a phone call in which Carr threatened to break AP's jaw into rape her. He obtained a directed verdict on intimidation. He presented evidence. He gave a closing argument, and he secured an acquittal on strangulation. Even though Taylor did not present Carr's phone records, he effectively used them. He reminded the jury that the state had downloaded Carr's cell phone information. And he asked the jury, if the state has this evidence, then why haven't you seen any evidence that Carr's phone has pornography on it from the time of the rape? Why haven't you seen a recording of the rape as AP testified? So counsel was able to effectively use the absence of that evidence without presenting it to the same effect. Counsel could not have impeached AP with their medications. Even though there's evidence in the record that AP filled a prescription for hydrocodone on the day of the events, there's absolutely no evidence in the record that she took any. She couldn't remember whether she did. And even though Carr had an opportunity to ask AP if her memory was affected by hydrocodone at the hearing on the motion-free trial, he never did. So we don't know what the effects of that prescription on her were. And Carr's argument specifically in state court was that AP had been administered anesthesia at the hospital. And that's simply not true. There's absolutely no evidence of that. Carr did not even present the hospital record when he could have. And that record would have shown that AP took promethazine, which is not anesthetic. So he could not have impeached her with her medications. And moving on to Carr's procedurally defaulted claim. Even though Taylor objected to the admission of the photograph of the hair for foundation, he didn't object under Brady. But he effectively used the absence of the clump of hair just as he did the absence of the phone records. He told the jury that AP was inconsistent about how her hair was removed, whether it was pulled out from the roots or whether it was torn. And he told the jury that if the state would have kept the clump of hair, then it could have presented it to you. And you could have looked at the hair and determined which version of that was true. So Carr's counsel effectively used the absence of the clump of hair. And, of course, he couldn't have objected to it under Brady because this isn't a Brady claim. When evidence is available to be objected to at trial, it isn't suppressed. What Carr is really making is a young blood claim. But to do that, he has to show bad faith. And he hasn't alleged any. And I'll briefly mention the procedural default. Carr cannot use Martinez to excuse his default because his post-conviction counsel didn't cause it. Carr's claims are procedurally defaulted because he had to fairly present all of them on direct appeal. In Indiana, he had one opportunity to allege Taylor's ineffectiveness. And because he raised that in his motion for new trial, he made it a direct appeal issue. So, therefore, Carr's counsel, and I believe it's pronounced Rumley, when she was acting as direct appeal counsel, she had to raise all the claims that Carr alleges she should have raised now. She could not raise those claims. On Ms. Rumley's role, then, she was retained, not appointed, correct? That's correct. Does her having been retained affect the Martinez-Trevino analysis? And if so, how? It does. It affects the Martinez-Trevino analysis because Martinez only applies when the state appoints counsel or the state does not appoint counsel. Because in that scenario, the procedural default is the state's responsibility. Does Martinez say that, or is that an implication from Martinez and Trevino? It's an implication from Martinez, and then go back one step further, from Coleman. Because Martinez is an equitable exception to Coleman, it's not a constitutional doctrine. So, Martinez, the court says, the state has the opportunity to appoint effective counsel and raise procedural default or not appoint counsel and respond to the merits. And by Carr, when Carr hired his own counsel, he didn't give the state that opportunity to make that election. And so the state isn't responsible for its procedural default, as it would be in a case when it appoints an effective counsel or doesn't appoint counsel at all. One of the complexities of the case, Mr. Drum, is the fact that when we're talking about the alleged defaulted claims, there is this decision from our court, Brown v. Brown, which talks about the Indiana structure and how there are certain circumstances where there's not going to be review of certain claims as a result of the way Indiana has set this up. Is that just a threshold question for the Martinez-Trevino generally? Or does Brown v. Brown have impact on this particular case? Brown establishes that Martinez is available for Indiana petitioners. And also in Brown, the court correctly describes the Davis procedure in Indiana. So it's our position that Martinez applies based on Brown. We're not contesting that. We're just arguing that Martinez doesn't apply in this case because it wasn't Carr's post-conviction counsel who caused this default. She couldn't raise these new claims on post-conviction proceedings because she raised them in her motion for a new trial. And if there are no further questions, I will rest on my brief. Thank you. Thank you, Mr. Drum. Mr. Thomas, we'll move back to you now for a rebuttal argument. Thank you, Your Honor. I would just first like to touch on the assertion that the claims are without merit. Although Mr. Taylor was certainly an effective trial counsel in certain aspects, that does not necessarily mean that he was effective in all aspects of integral aspects of the trial. So it would be our contention that although he maybe went through jury selection and those certain aspects the opposing counsel just mentioned, the fact that there were certain issues relating to physical evidence and the rebuttal of the victim in this case and to leave stones unturned, stones that we believe prejudiced Mr. Carr, we believe those claims are with merit. And turning to the Brown v. Brown case, I would like to point the court's attention to certain findings in Brown, such as that this court reversed the district court in Brown because there was at least some evidence of deficient performance by post-conviction counsel. And so there does not need to be some overwhelming degree of ineffectiveness. Rather, this court has stated there just need be some ineffectiveness. And the fundamental problem in this case is more of that and can be found in Campbell. The fundamental problem is that counsel did not investigate the impact of the claim she raised in the motion for new trial to the defense strategy. And similarly, Attorney Taylor at trial did not investigate the hair, the medicine, the hospital visits adequately to then be able to couch the mishaps as defense strategy. And even in trial court, I think it's worth pointing out that the trial court stated that they weren't sure if the medical reports would have gotten in. And I think it's important to note that we don't apply Strickland in hindsight. And I further don't believe it's fair for the trial court to then, in hindsight, say, oh, well, it wouldn't have mattered because it wouldn't have been admitted. And for those reasons, we upon car request that habeas relief or an evidentiary hearing be granted and remanded to the district court. Thank you very much, Mr. Thomas. Thank you, Mr. Drum. The case will be taken under advisement. Thank you.